(No. 19678.—

THE CITY OF CHICAGO, Appellee, *vs.* THE NORTHERN PAPER STOCK COMPANY, Appellant.

*Opinion filed October 19, 1929—Rehearing denied Dec. 11, 1929.*

FYFFE & CLARKE, for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, and FRANK PESKA, City Attorney, (LEON HORNSTEIN, JAMES I. McCARTHY, ROY S. GASKILL, and E. MARSHALL AMBERG, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The city of Chicago filed a complaint in the municipal court of that city charging that the Northern Paper Stock Company, a domestic corporation, conducted a junk store and operated the business of a junk dealer without a license in violation of section 3512 of the municipal code of 1922, as amended. A trial by the court without a jury resulted in a judgment imposing upon the defendant a fine of $200 and costs. The defendant prosecutes an appeal to this court since the validity of a municipal ordinance is involved in the case and the trial judge has certified that in his opinion the public interest requires such direct appeal.

The Northern Paper Stock Company, the appellant, occupies a three-story building eighty feet wide by one hundred feet long at 1408 Center street, in the city of Chicago. It buys sorted rags and paper in bales by loads from dealers in those commodities. It opens the bales, removes foreign substances, further sorts the rags and paper according to quality, grades them and makes them up in new bales. Sales are made to mills in car-load lots weighing fifteen

to sixteen tons, save that smaller quantities, not less than five hundred pounds, are sold to local mills and delivered by trucks. Appellant, in the conduct of its business, employs from fifteen to twenty persons.

Sub-section 95 of section 1 of article 5 of the Cities and Villages act (Cahill's Stat. 1927, p. 315; Smith's Stat. 1927, p. 343), confers upon city councils the power "to tax, license and regulate second-hand and junk stores and yards, and to forbid their purchasing or receiving from minors without the written consent of their parents or guardians, any article whatsoever, and to direct the location thereof." Claiming to exercise the power so granted, the city council of the city of Chicago passed sections 3511 and 3512 of the municipal code. Section 3511 defines "junk" to include "old iron, chain, brass, copper, tin, lead or other base metals, old rope, old bags, rags, waste paper, paper clippings, scraps of woolens, clips, bagging, rubber and glass, and empty bottles of different kinds and sizes when the number of each kind or size is less than one gross, and all articles and things discarded or no longer used as a manufactured article composed of or consisting of any one or more of the materials or articles herein mentioned." The section defines "junk dealer" as including "every person, firm or corporation that shall engage in the business of buying, selling, bartering or exchanging, or that shall collect, receive, store or hold in possession for sale, barter or exchange, any of the things in this section defined as junk, whether dealing at wholesale or at retail, or as a junk peddler." In "wholesale junk dealer" the section includes "every person, firm or corporation engaged in the business of buying, selling, bartering or exchanging in large quantities, or that shall collect, receive, store or hold in possession for sale, barter or exchange in large quantities, any of the things in this section defined as junk; provided, that dealing in large quantities shall be understood to mean that the customary and usual separate transactions both of pur-

chases and sales shall consist of the purchase or sale of car-load lots, or lots of ten tons or more of metals, or lots of ten bales or more of rags, and correspondingly large lots of any other junk * * *." The section defines "junk store" to mean "any store, shop, warehouse or building where junk is bought, sold, bartered or exchanged, or where junk is collected, received, stored or held in possession for re-sale, barter or exchange, either at wholesale or retail." Section 3512 requires every person, firm or corporation operating as a junk dealer, either wholesale or retail, or keeping a junk store, to obtain a license therefor, and pre-scribes a fine of not less than ten nor more than two hun-dred dollars for the failure to do so. Appellant contends that the business of buying from dealers, sorting, grading and selling bales of rags and paper in large quantities is not a junk business within the meaning of sub-section 95 of section 1 of article 5 of the Cities and Villages act, and hence that the city has no power to require it to obtain a license to carry on its business.

A municipal corporation derives its existence and its powers from the General Assembly. It possesses no in-herent power. In order to legislate upon or with reference to a particular subject or occupation such a corporation must be able to point out the statute which gives it the power to do so. A statute which grants powers to a munici-pal corporation is strictly construed, and any fair or rea-sonable doubt of the existence of an asserted power is resolved against the municipality which claims the right to exercise it. The implied powers which a municipal cor-poration possesses and may exercise are those necessarily incident to the powers expressly granted. Since a city has no power, except by delegation from the General Assembly, to license any occupation or to require the payment of a tax for the privilege of engaging in it, the power must be expressly granted in the city's charter or necessarily implied in or incident to the power expressly delegated. *City of*

*Rockford* v. *Nolan,* 316 Ill. 60; *Arms* v. *City of Chicago,* 314 id. 316; *Potson* v. *City of Chicago,* 304 id. 222; *Condon* v. *Village of Forest Park,* 278 id. 218; *City of Chicago* v. *Pettibone & Co.* 267 id. 573; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264; *Wilkie* v. *City of Chicago,* 188 id. 444.

The question whether a certain business comes within the municipal power to tax, license and regulate, granted by statute, must be determined by the general character and scope of the business. (*Commonwealth* v. *Farnum,* 114 Mass. 267; *Commonwealth* v. *Ringold,* 182 id. 308; *Eastman* v. *City of Chicago,* 79 Ill. 178). Sub-section 95 of section 1 of article 5 of the Cities and Villages act designates junk stores and yards as the subjects which, under the grant of power, may be municipally regulated. The business of dealing in junk is a recognized commercial enterprise. In conferring upon cities and villages the power to tax, license and regulate junk stores, the General Assembly doubtless contemplated that the power would be exercised with respect to places of business commonly known and understood as such. The added power enabling a city or village to forbid a junk store buying or receiving any article from a minor without the written consent of his parent or guardian enforces this conclusion. A minor who has committed larceny can more readily dispose of the stolen article at a junk or second-hand store than at most other stores or shops. Junk stores, because of the nature of their business, are afforded peculiar opportunities to buy stolen goods. Upon this ground the regulation of junk shops has been sustained as a proper exercise of the police power. *City of Chicago* v. *Lowenthal,* 242 Ill. 404; *City of Grand Rapids* v. *Braudy,* 105 Mich. 670; *State* v. *Cohen,* 73 N. H. 543; *City of St. Louis* v. *Baskowitz,* 273 Mo. 543.

Articles or materials collected by junk dealers and sold in junk stores may by their subsequent treatment in an in-

dependent business or occupation become of enhanced commercial value for ultimate use in another form. Such a business can hardly be designated as a junk store or yard. In *City of Chicago* v. *Lowenthal, supra,* it was held that a former Chicago junk shop ordinance requiring a license to keep a junk shop did not apply to a partnership engaged in the business of buying old metal in large quantities, melting it and then selling it, usually in car-load lots, to mills and factories. A person who had no shop but bought from a certain number of carriage manufacturers the odds and ends of new iron left from larger pieces used in the manufacture of carriages and not available for that use, and who later sold the iron, was declared not to be a junk dealer. *Commonwealth* v. *Ringold, supra.*

A city may not extend its power by a mere definition. (*Emmons* v. *City of Lewistown,* 132 Ill. 380). Without a statutory grant of power, the commonly accepted meaning of a junk store cannot be extended by ordinance to include the business of, buying rags and paper from dealers in large quantities, sorting and grading them according to quality, and selling them to mills and factories, usually in car-load lots. In such a business the materials are not collected, held or sold in the manner practiced by one operating a junk store or yard. A business does not come within the terms of a regulatory measure when the reason for the regulation does not exist. (*Commonwealth* v. *Ringold, supra;* 2 Words and Phrases, (2d ser.) p. 1273). The reasons requiring junk stores to obtain licenses do not apply to a business such as is conducted by the appellant, and that business does not come within the grant of power to a city to license junk stores and yards. To the extent that sections 3511 and 3512 of the municipal code require a license to conduct such a business they are void for the want of power to pass them.

The judgment of the municipal court of Chicago is reversed.

*Judgment reversed.*