(No. 19583.—

RUDOLPH BESKIN *et al.* Appellants, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed October 25, 1930—Rehearing denied Dec. 4, 1930.*

CHESTER E. CLEVELAND, and HARRY R. CHAPMAN, for appellants.

SAMUEL A. ETTELSON, Corporation Counsel, (LEON HORNSTEIN, and JAMES I. McCARTHY, of counsel,) for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellants, Rudolph Beskin, Nathan Blitzstein and Herman Kaplan, on behalf of themselves and others similarly situated, filed their bill in the circuit court of Cook county to restrain the enforcement by the city of Chicago of an ordinance passed May 19, 1926, regulating and licensing junk dealers. The case was heard upon a stipulation of fact. Appellants offered to prove certain other facts, but objections were sustained to the offer. The chancellor dismissed the bill for want of equity and an appeal has been prosecuted to this court, the trial court having certified that the validity of the ordinance is involved.

The sections of the ordinance of which complaint is made are as follows:

"3511. *Definitions*—The term 'junk,' as used in this chapter, shall be held to mean and include old iron, chain, brass, copper, tin, lead or other base metals, old rope, old bags, rags, waste paper, paper clippings, scraps of woolens, clips, bagging, rubber and glass, and empty bottles of different kinds and sizes when the number of each kind or size is less than one gross, and all articles and things discarded or no longer used as a manufactured article composed of or consisting of any one or more of the materials or articles herein mentioned.

"The term 'junk dealer,' as used in this chapter, shall be held to mean and include every person, firm or corporation that shall engage in the business of buying, selling,

bartering or exchanging, or that shall collect, receive, store or hold in possession for sale, barter or exchange, any of the things in and by this section defined as junk, whether dealing at wholesale or at retail, or as a junk peddler.

"The term 'wholesale junk dealer,' as used in this chapter, shall be held to mean and include every person, firm or corporation engaged in the business of buying, selling, bartering or exchanging in large quantities, or that shall collect, receive, store or hold in possession for sale, barter or exchange in large quantities, any of the things in and by this section defined as junk; provided, that dealing in large quantities shall be understood to mean that the customary and usual separate transactions, both of purchases and sales, shall consist of the purchase or sale of car-load lots, or lots of ten tons or more of metals, or lots of ten bales or more of rags, and correspondingly large lots of any other junk dealt in; and, provided, further, that purchasers of old or waste metals in large quantities shall be regarded as wholesale junk dealers unless they actually operate within the city a plant for the smelting or refining of such metals.

"The term 'retail junk dealer,' as used in this chapter, shall be held to mean and include every person, firm or corporation that shall engage in the business of buying, selling, bartering or exchanging, or that shall collect, receive, store or hold in possession for sale, barter or exchange, any of the things in and by this section defined as junk where the usual and customary purchases consist of quantities of less than the amounts customarily purchased by wholesale junk dealers as herein defined, or purchases from junk peddlers; provided, that a junk peddler, as herein defined, who does not occupy premises leased or purchased especially for the purpose of such business shall not be deemed a 'retail junk dealer' under the terms of this ordinance.

"3512. *Doing business without a license prohibited*—No person, firm or corporation licensed under the terms of this ordinance as a retail junk dealer shall be permitted under his

or its retail dealer's license to purchase junk, as defined in this ordinance, from another retail junk dealer, or to purchase junk in car-load lots or in large quantities as defined herein; provided, that any retail junk dealer that desires to purchase junk in such manner or such quantities may secure a separate license as a wholesale junk dealer if the wholesale business is carried on entirely distinct from the retail business, as hereinafter provided.

"3518. *License—how granted*—Every person, firm or corporation that shall keep, maintain or conduct both a retail junk business and a wholesale junk business shall procure a separate license for each, and if more than one retail junk business, for each such retail business. A separate license shall be procured by every junk dealer for each separate junk store or junk yard located on separate premises and for each junk wagon or junk boat used in the business.

"3520. *License fee*—The annual license fee for a retail junk dealer shall be $200. The annual license fee for a wholesale junk dealer shall also be $200. Every junk dealer, whether wholesale or retail, who shall operate a junk wagon or junk boat in connection with his business shall pay the sum of $15 annually as a license fee therefor to the city collector. A separate license shall be obtained for each and every junk wagon used in such business. All licenses shall expire on the 31st day of December of the year in which they are issued.

"3524. The annual license fee for junk peddlers shall be $15."

Appellants contend that the ordinance is uncertain, indefinite, unreasonable, discriminatory and confiscatory; that in order to carry on their business they are required to take out licenses to engage in a much more extensive business, which is improperly defined by the ordinance to be junk business; that they are arbitrarily deprived, wholly or to an unreasonable extent, of the market for their mer-

chandise; that their right to contract with respect to merchandise is unduly and illegally interfered with and restricted and they are denied the equal protection of the law; that section 3511 does not define what is meant by "customary and usual separate transactions, both of purchases and sales," which is the qualification prescribed for a wholesale junk dealer, nor does it define what is meant by "the usual and customary purchases," which is the qualification prescribed for a retail junk dealer, nor does it prescribe any way by which to ascertain what constitutes usual and customary separate transactions; that under section 3512, if a retail dealer cannot purchase from a retail dealer, a retail dealer cannot sell to a retail dealer; that there is no provision authorizing a wholesale dealer to purchase in less than the large quantities prescribed in the ordinance even if he takes out a retail license; that he can purchase less quantities only as a retailer, and the ordinance forbids one retailer from purchasing from another retailer; that this provision is not modified by section 3518, which requires every dealer who conducts a retail and a wholesale junk business to procure a separate license for each, or by section 3520, which provides that the annual license fee for retail junk dealers shall be $200 and for wholesale junk dealers shall be the same; that while the ordinance does not expressly prohibit wholesale dealers from purchasing from retail dealers, yet by the terms of the ordinance, whenever the usual and customary separate transactions, both of purchase and sale, are less than car-load lots, or less than ten tons of metal, or less than ten bales of rags, and correspondingly large lots of other junk, the dealer is automatically transferred from a wholesale dealer to a retail dealer, and the ordinance forbids one retailer from purchasing from another retail dealer or from purchasing junk in car-load lots or in large quantities as defined in the ordinance, and that the ordinance is highly penal, carrying a penalty from $10 to $200 for each offense.

It was stipulated that there are upwards of 250 dealers in junk in the city. Their business varies from those doing a business of between $5000 and $10,000 a year to large concerns doing $1,000,000 a year. The larger dealers are wholesale dealers and the smaller ones are retail dealers as defined in the ordinance. Some of the larger dealers do both a wholesale and a retail business but none of them have ever had both a wholesale and a retail license, nor have they had one place of business for their retail trade and another place for their wholesale business.

It was further stipulated that the three appellants are small dealers, occupying stores not over 30 by 120 feet. They buy from peddlers, who gather junk in push-carts and otherwise and sell to appellants. Appellants employ only one person at a small salary. They sort the junk and bale the rags. They sell to other dealers who do business on a larger scale. Their equipment is of little value and consists principally of a baling machine and scales. Their purchases do not exceed 400 pounds of metal, one-half a bale of rags and correspondingly small quantities of other junk. They do not accumulate at any time five tons of metal, five bales of rags or correspondingly large quantities of other junk. The business conducted by them is extremely small as compared with the business done by dealers who buy in large quantities and who have large places of business. There are now in force in the city, ordinances licensing different classes of business which pay a flat rate, as stated in the stipulation, varying from $25 to $600 per year. The smallest grain elevators in the city, which pay $200 per year, do an annual business much greater than the annual business done by any of appellants. There were in force at the time of the passage of this ordinance other ordinances of the city requiring license fees for various occupations, which are graded according to the size of the plant, the business done and the number of employees and wagons engaged therein, as set forth in the bill. There have been a num-

ber of suits instituted by the city in the municipal court for violations of this ordinance, which suits are now pending. Other suits will be instituted in case the junk dealers fail to take out licenses under the ordinance. Appellants rarely have a separate transaction consisting of either a purchase or sale of a car-load lot of junk as defined in the ordinance, or of ten tons or more of metal, or ten bales or more of rags, and a correspondingly large lot of other junk as defined to be junk; that the usual and customary separate purchases of appellants do not approximately exceed one ton of metal, one bale of rags and correspondingly small lots of other junk, and their usual and customary separate sales do not exceed two tons of metal, five bales of rags and correspondingly small lots of other materials; that the only purchasers of the junk which appellants have for sale are dealers in the city as defined in the ordinance; that there are dealers who sometimes make separate purchases of carload lots of ten tons or more of metal or ten bales or more of rags as defined in the ordinance; that there is no difference between the waste materials purchased by those who operate plants for the smelting and refining of such metal, and waste materials purchased by those who do not do so. There are in the city purchasers of waste materials who operate such plants who make separate transactions both of the purchases and sales which do not consist of car-load lots, or lots of ten tons or more of metal, or ten bales or more of rags, and correspondingly large lots of other material defined as junk by the ordinance.

In addition to the above stipulation appellants offered to prove the following facts: That it would be practically impossible for appellants to conduct their business, and they would be obliged to go out of business altogether, if they were compelled to accumulate car-load lots, or lots of ten tons or more of metal, ten bales or more of rags, and correspondingly large quantities of other junk, before making sales; that the greater part of the purchases by these deal-

ers are of less than car-load lots, and less than lots of ten tons of metal and ten bales of rags as defined in the ordinance, and that the usual purchases by the greater number of these dealers to whom appellants sell are less than car-load lots, or lots of ten tons of metal, or ten bales of rags. The objection to this offer of proof was sustained by the court.

Section 1 of article 5, paragraph 95, of the City and Village act, authorizes cities and villages as follows: "To tax, license and regulate second-hand and junk stores and yards, and to forbid their purchasing or receiving from minors without the written consent of their parents or guardians, any article whatsoever, and to direct the location thereof." It is not contended that under this statute cities and villages do not have the power to tax, license and regulate junk stores and yards, and it has been so held by this court. The right to tax includes both large and small dealers. *Smolensky* v. *City of Chicago,* 282 Ill. 131.

In *City of Chicago* v. *Adelman,* 326 Ill. 58, suit was brought against the defendants for conducting the business of a retail junk dealer without a license. The court sustained a motion to quash the complaint and dismissed the suit. An appeal was prosecuted to this court and the judgment was reversed and the cause remanded. The ordinance under which the defendant was sued in that case was the same ordinance which is now before this court. It was insisted that sections 3511, 3512, and other sections, were unconstitutional. It was held that the power to license and regulate implies the power to make reasonable classifications, so that the license will be uniform as to the class upon which it operates. It was claimed that section 3511 does not legally distinguish retail dealers from wholesale dealers; that section 3512, with reference to the purchase and sale by one dealer to another, was incapable of enforcement and was in restraint of trade. This court did not hold that these sections were invalid. It was held that an ordinance may consist of several sections or provisions,

some of which may be valid and some invalid, and that in such an ordinance the valid provisions or sections may be enforced though some of the sections or provisions are held void; that the only complaint the defendant could make was with reference to the sections of the ordinance which related to the business conducted by him, and that he could not question other provisions of the ordinance which did not refer to his business. On page 64 it was said: "So far as we are able to see, the license provision of the ordinance and the classification of junk dealers are neither unreasonable, oppressive, discriminatory or confiscatory. If appellee shall procure his license to conduct the business and then appellant shall attempt to enforce some of the provisions objected to which he thinks are invalid, it will be time enough for him to complain. He cannot object now to the valid provisions of an ordinance which he has never attempted to comply with, on the ground that if he did procure a license the city might attempt to enforce some provisions of the ordinance that he regards as void."

Appellants insist the *Adelman case* is not conclusive of this case because in that case this court had before it only the ordinance while in this case the ordinance and the stipulation are before the court, and the stipulation shows that the ordinance is invalid. The holdings in the *Adelman case* are conclusive of the same questions sought to be raised in this case.

If the license provisions of the ordinance and the classification of junk dealers are neither unreasonable, oppressive, discriminatory nor confiscatory, as was held in the *Adelman case,* there are very few other contentions of appellants to be considered. They insist that the word "junk" is improperly defined in the ordinance so as to include articles which are not junk, thus enlarging the meaning of the term. In 35 Corpus Juris, 127, the term is defined as follows: "Worn out and discarded material in general that may be turned to some use; odds and ends; old iron or

other metal, glass, paper, cordage, or other waste or discarded materials which may be treated or prepared so as to be used again in some form; rubbish of any kind; especially old rope, chain, iron, copper, parts of machinery and bottles gathered or bought up by tradesmen called junk dealers." Similar definitions are given by Webster, the Century Dictionary, Bouvier and Cyc. In *City of Chicago* v. *Matthies,* 320 Ill. 352, it was held that the city council, under the powers granted to it by the legislature, has authority to define a rooming house, and before that body imposes restrictions upon the use of a rooming house it is necessary that the term be so generally understood as to need no definition, or the ordinance must define it, otherwise the ordinance is incomplete. In *Banta* v. *City of Chicago,* 172 Ill. 204, the city undertook to define a broker in such a way that the word implied a broader meaning than was given to it in the earlier books but narrower than the meaning given to it at the present day. It was held that the transition from the restricted to the more enlarged sphere made a new definition imperatively necessary. The definition of junk in the ordinance is within the meaning of the term.

Appellants complain that the court erred in excluding the proof offered by them. The offer consisted of a statement to the effect that it would be practically impossible for appellants to accumulate car-load lots, or lots of ten tons or more of metal, or ten bales or more of rags, before making sales, and if they were required to do so they would be compelled to go out of business. There is nothing in the ordinance which requires a retail dealer to accumulate large lots of junk before he sells. The ordinance classifies a wholesale dealer as one who deals "in large quantities," and that expression is defined as meaning that "the customary and usual separate transactions, both of purchases and sales, shall consist of the purchase or sale of car-load lots, or lots of ten tons or more of metals, or lots of ten bales or

more of rags." It does not provide that the wholesaler can not purchase or sell in less quantities. A retailer is defined as one engaged in the junk business "where the usual and customary purchases consist of quantities of less than the amounts customarily purchased by wholesale junk dealers * * * or purchases from junk peddlers." It does not prohibit the retailer from selling in larger quantities if he sees fit. The recital of proof was, in part, the mere statement of a conclusion, and the material parts of it were covered by the stipulation. The objection was properly sustained to the offer.

We find no reversible error, and the decree is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*