City of Kewanee, Illinois, a Municipal Corporation, Plaintiff-Appellant, v. Riverside Industrial Materials Co. of Illinois, an Illinois Corporation, Defendant-Appellee.

Gen. No. 11,219.

Second District, Second Division.

May 6, 1959.

Released for publication May 22, 1959.

Fred J. Brown, of Kewanee, and Black, Black & Borden, of Peoria, for plaintiff-appellant.

Ewan and Fulton, of Kewanee, and Franklin F. Wallace, of Rock Island, for defendant-appellee.

JUSTICE SOLFISBURG delivered the opinion of the court.

This is a civil action brought by the City of Kewanee, Illinois, to recover a penalty for an alleged violation of a city ordinance by the defendant, Riverside Industrial Materials Company of Illinois, an Illinois Corporation.

The case was tried before a jury in the Circuit Court of Henry County, but upon the jury being unable to reach a verdict, the parties stipulated that the trial judge who presided at the hearing might decide the case upon the same evidence heard by the jury. The trial judge thereupon found the issues for and entered judgment for the defendant corporation. From that judgment the City of Kewanee takes this appeal.

An ordinance of the City of Kewanee, Illinois, entitled "Junk Yards," in force at the time in question, provided in pertinent part as follows:

"1. License Required.) No person, firm or corporation shall operate or maintain a Junk Yard within the City Limits of the City of Kewanee, without first having obtained a license from the City of Kewanee.

"3. Definitions.) A Junk Yard shall be defined, as a plot of ground, which may be covered with buildings; partly covered with buildings, or without any buildings; which plot is used for the buying, selling, storing, and trading of old iron, rags, hides, furs, old furniture, rubber, wool, used cars, used car parts, old metals, bottles and the like commonly called junk.

"5. Purchases From Minors Prohibited.) A licensee under this Ordinance shall not purchase or receive from minors any article whatsoever without the written consent of their parents or guardian.

"7. Penalty.) A person or corporation establishing and operating a Junk Yard contrary to the terms of this Ordinance shall be subject to a fine of $25.00 a day for every day so operated."

The Complaint alleges that the defendant failed to secure a license from the City of Kewanee to operate or maintain a junk yard in accordance with the ordinance just quoted, and that as a result the defendant was liable for the penalty of the ordinance amounting to $25 per day for each day's operation without a license. The answer of the defendant denied the validity of the ordinance, denied its applicability to the defendant, alleged that the ordinance was unconstitutional, and denied that any amount was due the City of Kewanee. The reply of the plaintiff city denied all the affirmative defenses.

It is contended on behalf of the plaintiff that the ordinance in question is applicable to the defendant corporation and is a valid exercise of the city's power

under Sec. 23–94 of the Revised Cities and Villages Act (Ill. Rev. Stats. 1957, Chapter 24, Section 23–94), which empowers the corporate authorities of a municipality:

"To license, tax, locate, and regulate all places of business of dealers in junk, rags, and any second-hand article whatsoever.

"To forbid any person from purchasing or receiving from minors without the written consent of their parents or guardians, any article whatsoever."

██ ██ It has long been settled in this State that local governments possess no inherent power to license any occupation or to require the payment of a tax for the privilege of engaging in the same (Herb Bros. v. Alton, 264 Ill. 628). In order to legislate upon or with reference to a particular subject or occupation, the municipal corporation must be able to point out the statute which gives it the power to do so, and such a statute is strictly construed (Chicago v. Northern Paper Stock Co., 337 Ill. 194). The principle that the power must be expressly granted or be a necessary incident to the powers so granted is simple to state, but difficulties arise in its application in particular cases. Section 23–94 of the Revised Cities and Villages Act, set forth above, has been construed by the Supreme Court of Illinois and the Appellate Courts of Illinois on numerous occasions. Those decisions furnish guides in determining (1) whether a particular exercise of power granted is applicable to a certain person or activity, and (2) whether it is a valid exercise.

██ At the outset there is a question as to what constitutes "junk" and "any second-hand article whatsoever" within the meaning of the statute. The courts of Illinois have followed the principle of *ejusdem generis* in this respect and held that the phrases "junk" and "any second-hand article what-

419

soever" were intended to authorize the licensing and regulation only of those stores or shops carrying on a business similar to junk stores, dealers in junk, rags, and similar articles, where inducements are apt to be held out to minors to pilfer articles in order to sell them at such stores or shops (Chicago v. Moore, 351 Ill. 510).

The words "junk, rags, and any second-hand article whatsoever," have been construed to mean only things of the same kind as those previously enumerated, and may not be held to include articles of "a class superior to that to which the particular words belong" (Chicago v. Stone, 328 Ill. App. 345). The words "and any second-hand article whatsoever" have been held not to include dealers in new and used motor vehicles where dealing in second-hand material is a mere incident of the business and not an essential part (Bullman v. Chicago, 367 Ill. 217), or dealers in second-hand books or magazines (Chicago v. Moore, 351 Ill. 510), or persons who bought rags and papers in bales by the load from dealers in these commodities (Chicago v. Northern Paper Stock Co., 337 Ill. 194). In the case of Chicago v. Lowenthal, 242 Ill. 404, (aff'g 146 Ill. App. 570) an ordinance of the City of Chicago involving the licensing of junk shops was held not to apply to a wholesale dealer in junk who bought only in carload or wagonload lots from regularly licensed junk shopkeepers, and who resold usually in carload lots after the junk was reprocessed. Chicago v. Iroquois Steel & Iron Co., 284 Ill. App. 561, construed the same city ordinance of the City of Chicago. There the defendant was a dealer who purchased iron and steel from dealers in carload lots and in large quantities only, and it appeared that the defendant did not buy from minors or adults except in large quantities. The Appellate Court of the First District held that the defendant in that case was not

conducting a junk business in the accepted sense of that term and that therefore the ordinance was inapplicable to it.

The plaintiff city earnestly contends that the competent evidence before the trial court was that the defendant purchased and stored small quantities of what is commonly accepted as junk from various individuals including minors and thereby operated and maintained a junk yard within the commonly accepted meaning of the term and meaning of the ordinance and the applicable statute. An examination of the record reveals that there was competent evidence before the trial court that the defendant corporation engaged in the business of operating an industrial scrap yard, handling industrial scrap in carload lots or other large quantities, processing it and preparing it for foundry use. Defendant's yard manager testified that some 90% of all scrap purchased by the defendant was obtained from industries and the balance was purchased from small scrap dealers. Plaintiff's photographs of the defendant's yard and defendant's plat of the same reveal it to be an industrial scrap yard with spur track and crane facilities. Defendant's records of purchases and sales further support the conclusion that defendant was operating an industrial scrap yard.

██ It is apparent from the record that the facts in the instant case are very closely akin to the facts in the Lowenthal (242 Ill. 404) and Iroquois Steel & Iron Co. (284 Ill. App. 561) cases just referred to. Therefore, our conclusion is that the ordinance in controversy does not apply to this defendant. Beskin v. Chicago, 341 Ill. 489, upon which plaintiff city strongly relies, is not a point since it concerned a very different ordinance which by its terms was clearly intended to apply to the defendant's operations there. We would further point out, since the plaintiff city

421

raises the point, that the defendant plainly had standing to raise the issue of the applicability of the ordinance to its operations, as well as the validity of the ordinance insofar as it might require defendant to procure a license (East Alton, Village of v. Arst, 386 Ill. 224).

The defendant has urged that the definition of a "junk yard" in Section 3 of the ordinance in controversy is invalid for failure to come within any accepted definition of the junk business. While the conclusion which we have reached does not require us to pass on this contention, we note that in Watseka v. Blatt, 320 Ill. App. 191, involving a zoning ordinance of the City of Watseka which defined a "junk yard" in exactly the same language found in the Kewanee ordinance now before us, this Court concluded that the definition of a junk yard in the Watseka ordinance could not be sustained.

The judgment of the Circuit Court of Henry County is accordingly affirmed.

Judgment affirmed.

WRIGHT, P. J. and CROW, J., concur.