## Frank J. Leach et al. *v.* Albert R. Florkosky et al.

Daly, C. J., Baldwin, King, Murphy and Mellitz, Js.

Argued June 6—decided July 24, 1958

*Stephen K. Elliott,* with whom was *John W. Joy,* for the appellants (defendants).

*J. Robert Lacey,* for the appellees (plaintiffs).

MELLITZ, J. The plaintiffs brought this action for an injunction to restrain the defendants from operating a motor vehicle junk business or motor vehicle junk yard, in violation of the provisions of chapter 230 of the General Statutes, on premises owned by the defendants in the town of Southington, and from maintaining a nuisance thereon. From a judgment in favor of the plaintiffs enjoining the defendants from continuing the activities complained of, the defendants have appealed. The court's memorandum of decision makes it clear that the judgment is based solely on the claimed statutory violation. No question of a nuisance apart from that is before us. Thus the sole determinative issue is whether the defendants are maintaining a motor vehicle junk yard on their premises within the meaning of § 2332d of the 1955 Cumulative Supplement to the General Statutes. The statute reads as follows: " 'Motor vehicle junk business' or 'motor vehicle junk yard' shall include any business and any place of storage or deposit, whether in connection with another business or not, which has stored or deposited two or more unregistered motor vehicles which are no longer intended or in condition for legal use on the public highways, or used parts of motor vehicles or old iron, metal, glass, paper, cordage or other waste or discarded or secondhand material which has been a part, or intended to be a part, of any motor vehi-

cle, the sum of which parts or material shall be equal in bulk to two or more motor vehicles. They shall also include any place of business or storage or deposit of motor vehicles purchased for the purpose of dismantling the vehicles for parts or for use of the metal for scrap and where it is intended to burn material which are parts of a motor vehicle or cut up the parts thereof."

The facts found, with such additions as are warranted, are as follows: The defendants own a five-acre piece of land on Canal Street in Southington, bordering on the tracks of the New York, New Haven and Hartford Railroad, where they conduct a business of salvaging and stripping ungraded tires. Opposite the premises of the defendants, the plaintiffs own a tract of land on Canal Street, with a dwelling house and other buildings thereon, and operate there the business of truck garden farmers. The defendants, in conducting their business, buy used tires, which they sort and grade. Many are then resold at wholesale. They do no retail business. Most of the defendants' business is salvaging casings. They recently constructed a cement block building, forty by eighty feet, and purchased a splitting machine for stripping the rubber from tires which cannot be resold; thus they are enabled to dispose of the rubber by sale. In the operation of the business, the defendants have a stock pile of 1000 or more tires spread over a large portion of their property. The tires are purchased by them and sometimes come to them mounted on metal rims or whole wheels. The defendants do not buy old automobiles to scrap or dismantle, or any other parts of vehicles, except tires. The only spare parts on their premises are parts for use on their own vehicles. The tires processed by them are of all sizes and descriptions,

some chopped in half and some with cuts and holes. They are spread on the defendants' property over a distance of two to three hundred feet along Canal Street. They are piled five or six feet high in some places and are greater in bulk than two motor vehicles. A report made in the regular course of his duties by an inspector of the department of motor vehicles, whose duty it was to determine whether premises are motor vehicle junk yards, stated that the defendants are engaged in the business of buying and selling automobile tires and tubes and that their place of business is not a motor vehicle junk yard under the standards laid down by the department. The defendants do not have a license from the commissioner of motor vehicles for the operation of a motor vehicle junk yard, nor have they obtained from the selectmen of the town of Southington a certificate approving their premises as a location therefor. The trial court concluded that in the operation of their tire salvage business the defendants are using their land as a place of storage or deposit of large quantities of used motor vehicle tires, the sum of which is equal in bulk to two or more motor vehicles; that they are maintaining a motor vehicle junk yard or motor vehicle junk business within the meaning of § 2332d without a license, in violation of § 4655 of the General Statutes (now Public Acts 1957, No. 438); and that the actions of the defendants constitute a nuisance from which the plaintiffs have suffered special damage entitling them to maintain this action for an injunction.

The effect of the court's interpretation of the statute is to make the continued operation of the defendants' business dependent upon their obtaining a license to maintain a motor vehicle junk yard. This in turn has the effect of subjecting their business to all

of the regulations and requirements which find their justification in the special considerations applicable to junk dealers and which, on that account, warrant the exercise of the police power for the protection of the public welfare. The licensing of dealers in junk is for the purpose of regulating such businesses as a protection against the crime of larceny and to provide for the detection of stolen articles. *Clapp* v. *Ulbrich*, 140 Conn. 637, 641, 103 A.2d 195. Similarly, to justify the regulation under the police power of motor vehicle junk yards, it was noted in *State* v. *Kievman*, 116 Conn. 458, 465, 165 A. 601, that the defendant there "purchased old, worn out, and broken automobiles, dismantled them on the premises, made some of the parts fit for resale, and broke up many of the parts, and in the process used acetylene gas and considerable quantities of gasoline." To be a constitutional exercise of the police power, legislation must operate in a field wherein the public health, safety and welfare are affected. *Amsel* v. *Brooks*, 141 Conn. 288, 293, 106 A.2d 152. The legislature has full power to regulate an ordinary and lawful business essential to the conduct of human affairs, in which all citizens have an equal right to engage, but its regulations must be governed by very different principles from those which may govern the regulations of a business in its nature dangerous to the public. *State* v. *Conlon*, 65 Conn. 478, 486, 33 A. 519. "In the one business no citizen has an absolute right to engage; in the other all citizens have the right and an equal right to engage. The difference is vital." Ibid. There is nothing involved in the operation of the defendants' business which requires that those engaging in it be regulated through the medium of a license and that the location of the business be restricted to a district where the local municipal au-

thorities, acting under the provisions of § 4654 of the General Statutes (now Public Acts 1957, No. 13, § 90), do not prohibit the location of motor vehicle junk yards. When regulations of businesses are imposed, the regulations "must not be unreasonably in excess of what is necessary to accomplish the supposed end; and in the case of a business in which all citizens have a right and an equal right to engage, the principle of equality of rights must, in this State, be observed." *State* v. *Porter,* 94 Conn. 639, 645, 110 A. 59.

The trial court has found that the business in which the defendants are engaged is that of salvaging and stripping ungraded tires. It has also found that the defendants do not buy vehicles to scrap or any other parts of vehicles except tires, do not purchase iron or steel, have no motors, radiators or batteries except for the cars which they use in their business, and do not purchase old worn-out automobiles, dismantle them on the premises, or make any parts fit for resale except tires. In short, the court has not found that there is anything in the operation of the defendants' business in any way resembling a motor vehicle junk yard. The stock-piling of used tires is but a necessary incident in the conduct of their business, and however large the stock pile, the business is not thereby converted into the category of a motor vehicle junk yard by reason of the definition in the statute. The fact that this is the interpretation placed upon the statute by the commissioner of motor vehicles, who is charged by § 4661 of the General Statutes (now Public Acts 1957, No. 438, § 3) with the enforcement of the statute, is entitled to great weight. *Clark* v. *Town Council,* 145 Conn. 476, 485, 144 A.2d 327; *State ex rel. Gray* v. *Quintilian,* 121 Conn. 300, 304, 184 A. 382; *Savings*

*Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 194, 167 A. 709; *Water Commissioners* v. *Curtis,* 87 Conn. 506, 511, 89 A. 189; *State ex rel. Corbett* v. *South Norwalk,* 77 Conn. 257, 264, 58 A. 759.

The statute having been enacted pursuant to the police power, there must be a rational relationship between the purposes which warrant the exercise of that power and the purposes designed to be served by the statute. "All police legislation is subject, in the courts, to the test whether it serves the public health, safety and morals at all and whether it does so in a reasonable manner." *Amsel* v. *Brooks,* 141 Conn. 288, 294, 106 A.2d 152; *Vermont Salvage Corporation* v. *St. Johnsbury,* 113 Vt. 341, 351, 34 A.2d 188. The purpose of the statute here, as stated heretofore, is to regulate motor vehicle junk businesses and motor vehicle junk yards because of their characteristics, to assure that they will be conducted in a legitimate manner. To that end licenses are required to be procured for their operation. None of these elements are attributes of the business operated by the defendants. Clearly, theirs is a lawful business activity as to which no special regulations under the police power would appear to be admissible within the purview of § 2332d. The purpose of the statutes relative to motor vehicle junk yards is not served by applying their provisions to a business like that of the defendants, and an interpretation which extends the terms of § 2332d to embrace the defendants' business is unrealistic and results in an application of the statute to a situation in which no relationship to the promotion of the public welfare is discernible. "Strict adherence to the letter of the . . . statute might seem to require the . . . conclusion [reached], but among recognized aids to be invoked in statutory construction are the legislative antecedents of the

statute, and its practical construction, especially by a governmental agency charged with its administration. . . . The search is for the intent of the lawmakers and when it is clearly ascertainable it prevails over the literal sense and precise letter of the statute." *State ex rel. Gray* v. *Quintilian,* supra. The only admissible interpretation of the definition incorporated in § 2332d is that it is intended to embrace businesses having the characteristics of a motor vehicle junk business or motor vehicle junk yard. The statute is not applicable to the business of the defendants. In situations somewhat similar, decisions in other jurisdictions have reached a like result. *Chicago* v. *Northern Paper Stock Co.,* 337 Ill. 194, 199, 168 N.E. 884; *Grace Iron & Steel Corporation* v. *Ackerman,* 123 N.J.L. 54, 58, 7 A.2d 820; *Commonwealth* v. *Ringold,* 182 Mass. 308, 309, 65 N.E. 374.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.