HELEN W. SIENKIEWICZ *v.* WALTER SIENKIEWICZ

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

676

Argued March 13—decision released August 28, 1979

*Jay H. Sandak,* for the appellant (plaintiff).

*Franklin Melzer,* for the appellee (defendant).

PETERS, J. The plaintiff filed an application for execution against the defendant's pension benefits to satisfy a court order for outstanding alimony and child support payments. The trial court determined that the defendant's pension benefits were a debt accruing by reason of personal services, and hence subject to execution, but limited the amount of the order to that provided in General Statutes § 52-361.

The plaintiff has appealed, arguing that the applicable execution statute is not § 52-361 but rather § 52-362.

The facts found by the trial court indicate the following: the plaintiff, Helen Sienkiewicz, and the defendant, Walter Sienkiewicz, were divorced on May 15, 1969. The plaintiff was awarded custody of the minor children, alimony, and child support. In 1978, when the plaintiff brought the present application for execution, she was entitled to receive $60 a week alimony and $50 a week support for the minor child, Julie, but had received no payments since November 4, 1977. The defendant, now retired and living in Florida, had been employed by Pitney Bowes, Inc., for over 40 years. During the course of his employment he had accumulated pension benefits which are currently paid at the rate of approximately $790 per month. The plaintiff filed her application for execution on January 16, 1978, seeking an execution order in the weekly amount of $110 plus any amount found to be due as an arrearage; due notice of the application was given to the defendant by personal service in Florida. As of April 7, 1978, the defendant was twenty-two weeks in arrears, in the amount of $2420.

After a hearing on the application, the trial court concluded that the pension benefits of the defendant constituted a debt accruing to the defendant by reason of personal services amounting to more than $50 a week, and that the plaintiff therefore was entitled to an execution against the defendant's pension fund. The court further decided that the extent of the execution order should be determined according to § 52-361, which limits the available part of the fund to $50 a week, rather than by § 52-362, which

would entitle the plaintiff to a less restricted order of execution. On appeal, the plaintiff claims that § 52-362 is the controlling section.

There are three statutes involved in this appeal —General Statutes §§ 52-361, 52-362, and 52-352a through 52-352c. The first two of these statutes deal specifically with wage executions, while the latter defines what property of a debtor is exempt from execution. The parties are in disagreement about the effect of the enactment of the exemption statute in 1977 upon the earlier enacted provisions governing wage executions. We agree with the plaintiff that § 52-362 continues to be the relevant provision to determine the propriety of executions for the support of family members and that the trial court was in error in ruling to the contrary.

Until 1977, Connecticut had two separate statutes governing wage executions, §§ 52-361 and 52-362. The two statutes have salient similarities, as well as salient differences. Under either statute, the process of wage execution is the same. A judgment creditor may obtain a court order directing the defendant, the judgment debtor, to make payment to the clerk of the court or otherwise. If the defendant fails to obey such an order, the judgment creditor may then apply to the court for an order that execution issue out of a "debt accruing by reason of personal services," typically wages. The order of wage execution, upon presentment to the individual person or corporation from whom this debt is due and owing, typically the judgment debtor's employer, becomes a continuing levy upon the wage debt until execution is satisfied. Similarity of process should not however obscure the fundamental differences of scope and reach of §§ 52-361 and 52-362.

Section 52-361, first enacted in 1949, is the broader statute. This section affords any judgment creditor, regardless of the source of his underlying claim, limited access to his debtor's wage income. Although the amount that the judgment creditor may reach has been amended from time to time, the principle of limitation has remained a constant. In this case, the parties are agreed, the plaintiff under this section could reach no more than $50 a week of the defendant's pension fund. There has always been a statutory ceiling by way of dollars, and there has always been a statutory prohibition against simultaneous satisfaction of more than one execution. The purpose of this principle of limitation, we held in *General Tires, Inc.* v. *United Aircraft Corporation,* 143 Conn. 191, 196, 120 A.2d 426 (1956), is to permit residual earnings to be paid to the debtor "for the support of himself and his family or for any other proper purpose."

Section 52-362, the other statute, first enacted in 1955; Public Acts 1955, No. 321; cuts a narrower but a deeper swath. Execution under this section may issue only for failure to obey a court order "for support of a wife or husband or a minor child or children." Such an execution may reach any amount, without ceiling, beyond a statutorily stated minimum, unless the court "deems" a lesser amount "equitable." Concurrent executions, forbidden under § 52-361, are permissible under § 52-362. Perhaps most significant for present purposes, execution on wages for support pursuant to § 52-362 "shall take precedence over any execution under the provisions of section 52-361."

Read together, the language of the two sections indicates, as the legislative history suggests,[1] that the rules governing wage executions were intended to distinguish between executions arising out of unrestricted, presumably commercial obligations to be governed by § 52-361, and executions arising out of support obligations, to be governed by § 52-362. Such a distinction is, as the plaintiff argues, consistent with the policy behind limitations on wage executions generally, since both statutes are designed to free resources for family obligations, § 52-361 by limiting competing claims, and § 52-362 by giving priority to support orders.

In 1977, Connecticut decided to modernize its antiquated exemption statutes. Public Acts 1977, No. 77-466, now §§ 52-352a, 52-352b, and 52-352c, enacted basic rules to determine what property of a debtor is unavailable to a creditor seeking to enforce a debt, including a judgment debt, by way of judicial process or court order. The exemption statutes make no distinction between creditors; some designated types of property are set aside to the debtor as beyond the reach of any judicial process. Among the categories of property to which the 1977 enact-

---

[1] When § 52-362 was first enacted, the committee chairman's comments on the floor of the Senate made explicit that in family matters the amount of funds subject to execution should be greater than for those situations falling within § 52-361. The chairman stated: "[T]his bill concerns itself with the situation where a Superior Court or any other Court has entered a support order for the benefit of a minor child or minor children. In the event the person against whom the order for support is entered, defaults, the beneficiary of the bill can go into the court and obtain a wage execution on everything in excess of twenty-five dollars per week. This bill does not conflict with Sec. 8102 as amended [General Statutes § 52-361], which applies to execution after judgment, in that this bill concerns itself strictly with executions where support orders are in default." 6 S. Proc., Pt. 5, 1955 Sess., p. 1684.

ment gave shelter from execution was property in the form of payments received under a pension plan. Under § 52-352c (d), payments under a pension plan are exempt property "to the extent that wages are exempt from execution under section 52-361." The defendant reads this cross-reference to § 52-361 to override the special regulation of enforcement of support orders contained in § 52-362. We give it a different construction.

Nothing in the legislative history of Public Acts 1977, No. 77-466, suggests that the legislature intended to demote support orders to a more disfavored position than they had previously enjoyed.[2] Connecticut's exemption statute, dating in part from 1711, had contained a hodge-podge of provisions of greater interest to a colonial historian than to a modern debtor. The statute was revised to accommodate the commercial needs of a modern

---

[2] The chairman reporting the bill for the committee characterized it as follows: "[T]his bill modernizes Connecticut's exemption statute by changing it to reflect the kinds of property that exists [sic] in modern society. There are two major purposes to an exemption statute. One is to make certain that a debtor cannot be so stripped of property that he is left with absolutely nothing. For example, Connecticut is [sic] always exempted from attachment of debtors necessary clothing and household goods. The other is to prevent a debtor from being deprived from his capacity to work. If this happens, he becomes unable to pay his other creditors and he then files bankruptcy which means that none of his creditors are in fact paid. Connecticut's exemption statute dates to at least 1711 and it has not been significantly changed since 1879. The goods that it exempts from attachment were the basic property of the farm society of the 1800's. Thus for example it exempts 200 pounds of wheat flour, ten bushels of Indian corn, ten bushels of rye but it does not exempt bread. It exempts five bushels of potatoes and five bushels of turnips but it does not exempt even $10 with which to buy food. It exempts one cow not to exceed $150 in value and ten sheep worth up to $15 a piece. It exempts an oyster boat but not a car. This bill modernizes the statute by relating it to present day property." 20 H. R. Proc., Pt. 8, 1977 Sess., p. 3166.

society. If anything about support is to be inferred from the new statute, its listing of support orders among the classes of exempt property, beyond the reach of creditors, in §§ 52-352b (h) and 52-352c (e), is consistent with the objectives of § 52-362.

The United States Court of Appeals for the Second Circuit has recently had the occasion to resolve a question of interpretation quite similar to the case before us. We must decide whether § 52-352c (d)'s exemption of pension plan payments "only to the extent that wages are exempt from execution under section 52-361" can be interpreted to imply also exceptions for support orders under § 52-362. In *American Telephone & Telegraph Co.* v. *Merry,* 592 F.2d 118 (2d Cir. 1979), the issue was whether a garnishment order to compel family support payments was impliedly excepted from the absolute and unqualified proscription of alienation and assignment in § 206 (d) (1) of the Employee Retirement Income Security Act of 1974. 29 U.S.C. § 1056 (d) (1). The *Merry* court, in deciding that an implied exception was appropriate stated (p. 124): "The purpose of the proscription on alienation and assignment is to protect an employee from his own financial improvidence in dealings with third parties. The provision is not intended to alter traditional support obligations but rather to assure that the employee and his beneficiaries reap the ultimate benefits due upon retirement." The court relied also on the federal policy, embodied in other federal legislation, of enforcing support obligations so that dependent spouses and children will not be required to resort to welfare assistance.

We find the holding of the *Merry* court to be analogous and its reasoning persuasive. Enforce-

ment of support orders should take priority over general provisions designed, in the interest of the family, to limit third party encroachment on family assets. Had our exemption statute contained no exception whatsoever to the exemption of pension payments from execution, we might well have considered following our federal colleagues to infer a special exception for court orders for support. But we need not go that far today. The fact is that, in the text of our statute, the exemption for pension payments is neither absolute nor unqualified. Since the legislature explicitly recognized that creditors generally had some claim even to pension payments, the legislature should be deemed to have recognized the preferred position among judgment creditors that it itself has assigned to those relying on court orders for support. We read the express cross-reference to § 52-361 to incorporate by implication a cross-reference as well to § 52-362. We do not believe that the General Assembly's commitment to enforcement of support obligations and reduction of the welfare rolls is any less fervent than is that of the United States Congress. See, e.g., General Statutes §§ 46b-180 through 46b-211, the Uniform Reciprocal Enforcement of Support Act, and §§ 46b-215 through 46b-219, concerning support obligations of relatives. When it is clear that the intent of the legislature conflicts with the literal and precise language of a statute, it is appropriate for this court to construe the statute, with implied exceptions, in furtherance of the legislature's purpose and objectives. *Leach* v. *Florkosky,* 145 Conn. 490, 497, 144 A.2d 334 (1958); *New Haven Savings Bank* v. *Warner,* 128 Conn. 662, 668–69, 25 A.2d 50 (1942); *Brown, State's Attorney, ex rel. Gray* v. *Quintilian,* 121 Conn. 300, 304, 184 A. 382 (1936).

In the case before us, therefore, the trial court erred in calculating the amount of the execution according to the provisions of § 52-361 rather than those of § 52-362. The case is remanded to the trial court for consideration of an order of execution appropriate under § 52-362.

There is error and the case is remanded for further proceedings in accordance with this opinion.

In this opinion COTTER, C. J., and BOGDANSKI, J., concurred.

LOISELLE, J. (dissenting). Although my colleagues in the majority disagree, I see this case as one in which the plaintiff, because of the equities, and because of the intent reasonably inferred in two of the three statutes involved in this case, seeks from this court legislation by judicial fiat.

There are three statutes which must be considered in the determination of the present appeal. General Statutes § 52-361 is quite lengthy and somewhat complicated, but the provisions pertinent to the present case may be summarized as follows: After a court has made an order of payment to the clerk of the court or otherwise and the defendant fails to obey the order, the judgment creditor may apply to the court for an order directing that an execution issue against the defendant. When so ordered, the execution shall be presented to the individual person or corporation from whom a debt accruing by reason of personal services is due and owing and the execution shall become a continuing levy upon the debt until the execution is satisfied. The formula for the amount to be paid on the execution is spelled out and in the present case the parties hereto have agreed that the sum recoverable each week under this section is no more than $50.

General Statutes § 52-362 (Rev. to 1975), which specifically provides for orders of execution for alimony and child support payments, was first enacted in 1955 to allow a wage execution "against such amount of any debt accruing by reason of personal services due and owing to such [debtor] as exceeds twenty-five dollars [of disposable earnings] per week, or against such lesser amount . . . as said court deems equitable." In 1976; Public Acts 1976, No. 76-66; "fifty dollars" was substituted for "twenty-five dollars." In 1978, after the trial court rendered its decision in this case, the statute was amended; Public Acts 1978, No. 78-217; § 1; to substitute "seventy dollars" for "fifty dollars." Other amendments were made but are not pertinent to the issue in this case.

If only these two statutes were applicable, there is no question but that the plaintiff's claim would qualify under General Statutes § 52-362. The debt is for support and the pension payments would be included as a "debt accruing by reason of personal services due and owing." Further, as stated in the majority opinion, the intent of the act was to allow wage executions under this act in addition to those specified in General Statutes § 52-361.

In 1977, however, what is now General Statutes §§ 52-352a through 52-352c were enacted.[1] In

---

[1] "[General Statutes] Sec. 52-352a. DEFINITIONS. For the purposes of this section and sections 52-352b and 52-352c, the following terms shall have the following meanings: (a) 'Value' means fair market value of the exemptioner's equity or unencumbered interest in the property; (b) 'Necessary' means reasonably required to meet the needs of the exemptioner and his or her dependents including any special needs by reason of health or physical infirmity; (c) 'Exempt' means, unless otherwise specified, not subject to any form of process or court order for the purpose of debt collection; (d) 'Exemptioner'

§ 52-352a (c), "exempt" is defined as "not subject to any form of process or court order for the purpose of debt collection." In § 52-352c (d), pensions, such as the defendant's from Pitney Bowes, are exempt "to the extent that wages are exempt from execution under section 52-361." It is noteworthy that the next subsection relating to alimony and support is exempt to the extent that execution is limited by § 52-361.

means the natural person entitled to an exemption under this section or section 52-352b or 52-352c.

Sec. 52-352b. PROPERTY EXEMPT. The following property shall be exempt: (a) Necessary apparel, bedding, foodstuffs, household furniture and appliances; (b) Tools, books, instruments and farm animals which are necessary to the exemptioner in the course of his or her occupation or profession; (c) Burial plot for exemptioner and his or her immediate family; (d) Public assistance payments and any wages earned by a public assistance recipient under an incentive earnings or similar program; (e) Health and disability insurance payments; (f) Health aids necessary to enable the exemptioner to work or to sustain health; (g) Workman's compensation, social security, veterans and unemployment benefits; (h) Court approved payments for child support; (i) Arms and military equipment, uniforms or musical instruments owned by any member of the militia or armed forces of the United States.

Sec. 52-352c. ADDITIONAL EXEMPT PROPERTY. The following property shall be allowed as exempt in addition to any property allowed as exempt under section 52-352b: (a) One motor vehicle to the value of one thousand five hundred dollars. For the purposes of this subsection value shall be determined as the fair market value of the motor vehicle less the amount of all liens and security interests which encumber it; (b) Wedding and engagement rings; (c) Residential utility deposits for one residence, and one residential security deposit; (d) *Payments received by the exemptioner under a profit sharing, pension, stock bonus, annuity or similar plan which is established for the primary purpose of providing benefits upon retirement by reason of age, health, or length of service and which is either (1) qualified under Sections 401, 403, 404 or 408 of the Internal Revenue Code, or any successor thereto, or (2) established by federal or state statute, but only to the extent that wages are exempt from execution under section 52-361;* (e) Alimony and support, other than child support, but only to the extent that wages are exempt from execution under section 52-361; and (f) An award under a crime reparations act." (Emphasis added.)

The purpose of including all of the provisions of General Statutes §§ 52-352a through 52-352c in the previous footnote is to make evident that those provisions are plain and their language is unambiguous. Its unequivocal meaning is not subject to modification by way of construction. *Colli* v. *Real Estate Commission,* 169 Conn. 445, 450, 364 A.2d 167; *General Tires, Inc.* v. *United Aircraft Corporation,* 143 Conn. 191, 195, 120 A.2d 426. The exemption in General Statutes § 52-352c (d) limits the execution to the provision of § 52-361 as was ordered by the trial court.

"[I]t is basic law that when a later general statute covers the whole subject to which it relates it will be held to repeal by implication all prior statutes on the subject matter, whether general or special." *East Haven* v. *New Haven,* 159 Conn. 453, 467, 271 A.2d 110. At the time of the enactment of §§ 52-352a through 52-352c, the legislature was presumed to know of the existence of § 52-362 and any conflict among the sections would be resolved in favor of the latest enactment. *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 206, 355 A.2d 21. In some instances, a statute, general in its terms, may be construed to admit implied exceptions. *New Haven Savings Bank* v. *Warner,* 128 Conn. 662, 669, 25 A.2d 50; *Kelley* v. *Killourey,* 81 Conn. 320, 321, 70 A. 1031. However, this interpretation is made only when the intent of the legislature is clear notwithstanding the literal sense and precise letter of the statute. *Busko* v. *DeFilippo,* 162 Conn. 462, 471, 294 A.2d 510; *State ex rel. Gray* v. *Quintilian,* 121 Conn. 300, 304, 184 A. 382. This rule of construction applies to General Statutes §§ 52-352a through 52-352c.

The májority opinion implies an exemption in General Statutes § 52-352c (d) to include General Statutes § 52-362 in addition to General Statutes § 52-361 where there is none. The basis of their opinion is that since "the legislature should be deemed to have recognized the preferred position among judgment creditors that it itself has assigned to those relying on court orders for support," this court will imply an additional exception. Whether the legislature omitted the exemption to General Statutes § 52-362 in the general exemption statute General Statutes § 52-352c (d) by design or by inadvertance cannot be determined through examining its legislative history or referring to the wording of the statute. I read the majority opinion as stating that because it is felt that the legislature should have made an additional exemption because of the preferred position of those who are entitled to support, and it did not, this court will. In my opinion, this is legislation by the judiciary which is forbidden by our state constitution.

As I read General Statutes §§ 52-352a through 52-352c, the intent is clear and the exemptions are specific and detailed. "If it be true, however, that the statute in its present form is apt to work an injustice, that is something for the legislature to cure. It does not require modification of the terms of the statute by the courts for the sake of accomplishing what might appear to be justice." *General Tires, Inc.* v. *United Aircraft Corporation,* supra, 196.

In this opinion LONGO, J., concurred.