[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
Frances Sinicropi, the plaintiff, and Giovanni Sinicropi, the defendant, were divorced in New Jersey on February 22, 1973. In August of 1997, the defendant retired from his employment as a professor at the University of Connecticut. Presently, the CT Page 10853 defendant resides in Italy and receives state pension benefits. On April 24, 1997, the defendant was ordered to continue paying $400 per month alimony to the plaintiff. On November 6, 1997, Family Support Magistrate Reynolds ordered income withholding against the defendant's state pension benefits to enforce the defendant's alimony obligation pursuant to General Statutes §52-362(b).[1]
Pursuant to General Statutes § 46b-231,[2] the defendant petitioned the Superior Court to review, by way of appeal, Magistrate Reynolds' income withholding order. The appeal is taken on the grounds that substantial rights of the defendant were prejudiced because the magistrate's decision was in violation of General Statutes § 52-321a(a)(3)[3]
and was clearly erroneous in view of the evidence. The defendant argues that Magistrate Reynolds erred in not exempting the defendant's pension benefits from the income withholding order. The defendant also argues that the plaintiff is seeking "alimony" and not "support" as that term is defined in General Statutes § 52-362 and thus, the pension is not subject to garnishment.[4]
This court scheduled a hearing on this matter to determine what statute, if any, created the defendant's pension[5] and requested that the parties brief the issue of whether the court had the authority to enter a postjudgment qualified domestic relations order (QDRO) for enforcement purposes should the court affirm the decision of Magistrate Reynolds. The defendant filed a brief on the QDRO issue and raised an additional issue regarding personal jurisdiction over the defendant.[6] The plaintiff filed a brief on the issue of personal jurisdiction but failed to brief the QDRO issue.
 DISCUSSION
In Sienkiewicz v. Sienkiewicz, 178 Conn. 675, 683,425 A.2d 116 (1979), the Connecticut Supreme Court permitted an income withholding order to be executed against an obligor's pension benefits to the extent allowed by General Statutes § 52-352c
in order to enforce alimony and child support obligations. General Statutes § 52-352c(d) (Rev. to 1983) provided, in relevant part: "[t]he following property shall be allowed as exempt in addition to any property allowed as exempt under section 52-352b: . . . [p]ayments received by the exemptioner under a . . . pension . . . plan which is established for the CT Page 10854 primary purpose of providing benefits upon retirement by reason of age, health, or length of service and which is either (1) qualified under Sections 401, 403, 404 or 408 of the Internal Revenue Code, . . . or (2) established by federal or state statute, but only to the extent that wages are exempt fromexecution under section 52-361." (Emphasis added.) Therefore, General Statutes § 52-352c(d) provided for an exception to the exemption, thereby making the exemption for qualifying pension plans limited.
General Statutes § 52-352c, however, was repealed by Public Acts 83-581, § 39 and 84-546, § 127. The only remaining exemption statute was General Statutes § 52-352b. The exemptions previously listed in General Statutes § 52-352c
were added to General Statutes § 52-352b by Public Act 83-581, § 25. As such, the former limited exemption for qualifying pension plans was now located in subsection (m) of General Statutes § 52-352b. In 1991, General Statutes § 52-352b was amended by Public Act 91-239, § 3. This amendment deleted the language which provided for an exception to the exemption accorded qualifying pension plans.[7] Thus, the issue before this court is whether qualifying pension plans are now accorded an absolute or unqualified exemption status.[8]
The defendant argues that the Sienkiewicz decision is no longer controlling precedent regarding the exemption status of qualifying pension plans. The plaintiff argues that the exemptions set forth in General Statutes § 52-352b do not apply to income withholding orders entered to enforce family support orders because a former spouse is not a "creditor" within the usual sense of the word. The Connecticut Supreme Court, however, applied the pension plan exemption to an income withholding order issued to enforce alimony and child support obligations. See Sienkiewicz v. Sienkiewicz, supra,178 Conn. 683. Additionally, the applicability of General Statutes §52-352b to situations involving income withholding orders to enforce family support orders is reinforced by the express language of General Statutes § 52-362(b), as amended by Public Act 97-7, § 28 (June 18, 1997 Special Session), which provides that "[b]efore the court or family support magistrate issues an order for withholding . . ., it shall inform the obligor of . . . his right to claim any applicable state or federal exemptions with respect thereto." (Emphasis added.)
Whether a party seeking an income withholding order to CT Page 10855 enforce alimony and child support obligations can attach a pension which is normally exempt from such a withholding under the statutes as amended in 1991 and 1997 has not been addressed by Connecticut's Appellate or Supreme Court. In McGran v. McGran, Superior Court, judicial district of New Haven at New Haven, Docket No. 354670 (December 8, 1995) (Munro, J.), the court stated that "[t]he State of Connecticut itself, took the position, until recently, that [a state pension] could not be attached or assigned for any purpose unless specifically provided for by statute. The State Employee's Retirement Act is codified at General Statutes §§ 5-152 through 5-192[x]. The past policy to allow no assignment of the employee's pension finds its authority in Connecticut General Statutes § 5-171, which provides, `Any assignment by a member or beneficiary of any amount payable to either under the terms of this chapter shall be null and void.' Within the last year, the State of Connecticut Comptroller's Office has revised the nonassignability policy regarding domestic relations orders for spousal or child support. The law, however, has not changed, only the internal administrative policy." McGranv. McGran, supra, Superior Court, Docket No. 354670 (December 8, 1995) (Munro, J.). But see, Plante v. Plante, Superior Court, judicial district of Tolland at Rockville, Docket No. 53464 (November 15, 1996) (Bishop, J.) (issuing an income withholding order against State Police Retirement Fund earnings to enforce alimony and child support obligations albeit without discussion of General Statutes § 52-321a); Oliver v. Oliver, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 135597 (August 3, 1995) (Harrigan, J.) (issuing an income withholding order against U.S. Air Force pension payments to enforce a child support obligation also without discussion of General Statutes § 52-321a).
The Connecticut Supreme court stated that an exception to the absolute exemption for qualifying pension plans could be implied. See Sienkiewicz v. Sienkiewicz, supra, 178 Conn. 683 ("Had our exemption statute contained no exception whatsoever to the exemption of pension payments from execution, we might well have considered following our federal colleagues to infer a special exception for court orders for support."). This court will follow the logic and reasoning proposed in the Sienkiewicz decision and imply an exception to the exemption for court orders for support. As discussed below, the court finds this implication to be in keeping with federal law and the public policy of this state in its commitment to the enforcement of support orders. CT Page 10856
In addition, wage withholding orders from a pension or retirement program finds support in the definition income as set forth in Public Acts, Spec. Sess., June 18, 1997, No. 97-7 § (a)(5) which provides: "`income' means any periodic form of payment due to an individual, regardless of the source, including, but not limited to, disposable earnings, workers' compensation and disability payments, payments pursuant to apension or retirement program and interest[.]" (Emphasis added.) Furthermore, Public Acts, Spec. Sess., June 18, 1997, No. 97-7 § (b) provides in pertinent part that "[t]he Superior Court and any family support magistrate shall issue an order for withholding pursuant to this section against the income of an obligor to enforce a support order when the support order is entered or modified or when the obligor is before the court in an enforcement proceeding." (Emphasis added.)
"In American Telephone Telegraph Co. v. Merry, 592 F.2d 118
(2d Cir. 1979), the issue was whether a garnishment order to compel family support payments was impliedly excepted from the absolute and unqualified proscription of alienation and assignment in . . . the Employee Retirement Income Security Act [ERISA.] . . . The Merry court, in deciding that an implied exception was appropriate stated (p. 124): `The purpose of the proscription on alienation and assignment is to protect an employee from his own financial improvidence in dealings with the third parties. The provision is not intended to alter traditional support obligations but rather to assure that the employee and his beneficiaries reap the ultimate benefits due upon retirement.' The court relied also on the federal policy, embodied in other federal legislation, of enforcing support obligations so that dependent spouses and children will not be required to resort to welfare assistance." Sienkiewicz v.Sienkiewicz, supra, 178 Conn. 682. Although ERISA legislation has been amended since Sienkiewicz was decided in 1979, the reasoning behind carving out an exception to the proscription of alienation and assignment of pension benefits has not changed. See, for example, Baird v. Baird, 843 S.W.2d 388, 391 (Mo.App.E.D. 1992) (noting that "Congress carved out an exception to the spendthrift provision by passing the Retirement Equity Act, which amended ERISA to permit a pension plan participant to alienate or assign benefits") and Stinner v. Stinner, 554 A.2d 45, 47 (Pa. 1989), cert. denied, 492 U.S. 919 (1989) (court held that a support order was exempt from the anti-alienation provisions of ERISA and thus a pension was subject to garnishment). CT Page 10857
In terms of promoting the public policy of this state in the enforcement of support orders, this court agrees with the discussion of the New Jersey Superior Court as expressed in Bilesv. Biles, 394 A.2d 153, 157 (1978) (public policy "is clearly that support obligations outweigh the competing interest of insulating pension benefits from creditors"). See also Iannottiv. Iannotti, Superior Court, judicial district of New Haven at New Haven, Docket No. 238433 (January 17, 1997, Alander, J.) (18 CONN. L. RPTR. 509, 3 Conn. Ops. 188) (allowing assignment of an ERISA pension plan toward payment of a child support arrearage). This court finds that the logic and reasoning of the cases discussed above are sound and persuasive. Although the present pension is not an ERISA pension, the reasoning of the cases remains instructive. As aptly stated in Biles v. Biles,supra, 394 A.2d 156, "[i]t would be ironic indeed if a provision designed in part to ensure that an employee spouse would be able to meet his obligations to family after his retirement were interpreted to permit him to evade them with impunity after divorce." Id.
Based on the foregoing, the order of the magistrate for a wage withholding against the pension of Mr. Sinicropi is affirmed as to all awards of future alimony. As to the arrearage, the court will next discuss establishing a qualified domestic relations order to collect the existing arrearage.
The court will briefly discuss the issue of whether it has authority to create a QDRO for purposes of enforcing the alimony order. "A QDRO is the exclusive means by which to assign to a nonemployee spouse all or any portion of pension benefits provided by a plan that is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. . . . the procedures set forth in the United States Code for a QDRO do not apply to a governmental pension plan such as the state teachers' plan from which the defendant derives his pension. . ." Krafickv. Krafick, 234 Conn. 783, 786 n. 4, 663 A.2d 365 (1995). InKrafick the defendant's pension derived from a New York State teacher's plan but the retirement system agreed to abide by the orders of the court directing payment of the pension to the spouse. As stated above, "the State of Connecticut Comptroller's Office has revised the nonassignability policy regarding domestic relations orders for spousal or child support." McGran v. McGran,supra, Superior Court, Docket No. 354670 (December 8, 1995) (Munro, J.).
General Statutes § 52-321a(b) "exempts retirement income CT Page 10858 from the claims of all creditors except pursuant to a qualified domestic relations order." Iannotti v. Iannotti, supra, 3 Conn. Ops. 190. The statute provides in pertinent part: "Nothing in this section shall impair the rights of an alternate payee under a qualified domestic relations order. . ." General Statutes § 52-321a(b). "See also General Statutes § 52-350a, et seq. which exempts family support judgments from the ban on post judgment attachment of retirement income." Iannoti v. Iannotti,supra, 3 Conn. Ops. 190. This court is in agreement with the Colorado Appellate Court which held that the use of a QDRO as a method of collecting a maintenance arrearage was proper. In reMarriage of LeBlanc, 944 P.2d 686, 688 (1997). "[A] majority of courts addressing the issue have recognized the effectiveness of a QDRO to enforce an earlier support judgment and allow collection of delinquent maintenance from a pension plan." Id.
"Honoring the enforcement of support orders is the policy that underlies the creation of the QDRO as an exception to the anti-alienation provisions of ERISA. For that reason, we agree with the majority of courts addressing this issue and conclude that a QDRO may be used to enforce an earlier support judgment and collect delinquent maintenance from the obligor's pension plan."Id. See also Rohrbeck v. Rohrbeck, 566 A.2d 767 (Md. 1989) (holding that a spouse may enforce a previously entered judgment in a divorce action by obtaining a QDRO).
For the foregoing reasons, the defendant's pension benefits are not exempt from an income withholding order as to future alimony installments nor is the arrearage exempt from collection through the establishment of a qualified domestic relations order. Accordingly, the appeal is denied and the decision of the magistrate is upheld as to the income withholding order. Thus, the court orders income withholding from the defendant's pension benefits in the amount of $400 per month to begin immediately and additionally orders the defendant to draft a qualified domestic relations order assigning an additional $200 per month of the defendant's pension benefits toward payment on the present arrearage until the arrearage is paid in full. The QDRO is to be submitted by the plaintiff to the defendant and the plan administrator for their review and to the court for its approval within three weeks from the date of this memorandum of decision. The court retains jurisdiction to approve the QDRO.
Barall, J.